*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 22, 2022

Plaintiff-Appellee,

v

No. 358468
Berrien Circuit Court
LC No. 20-004416-FH

JOHNNIE LEWIS LUCAS, JR.,

Defendant-Appellant.

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right, challenging the sufficiency of the evidence supporting his jury trial conviction of receiving or concealing stolen property (motor vehicle) pursuant to MCL 750.535(7). We affirm.

## I. STATEMENT OF FACTS

On December 30, 2020, around 1:00 a.m., Brittany Elaine Lauderdale drove a gold 2008 Buick Lucerne with permission from the owner, Dustee Shay, to the Valero gas station in Durand. Lauderdale parked the Buick, leaving the car running and the keys inside. Before Lauderdale entered the gas station, a man approached Lauderdale and asked if she had any extra money for gas. According to Lauderdale, a dark gray Chevrolet Monte Carlo was parked next to a gas pump, and the man who approached her was wearing dark clothing: long sleeves, pants, and a scarf covering part of his face. Other than the Monte Carlo and the man, Lauderdale did not notice any other cars or people outside the gas station. Lauderdale responded that she had no extra money and proceeded to enter the store. When Lauderdale left the store, neither the Buick nor the man who asked for money was present outside the gas station; only the Monte Carlo remained. Lauderdale reentered the store and told the clerk that her car had just been stolen. The store clerk called the police, and Lauderdale notified Shay, the owner of the Buick.

Around 3:00 p.m. that same day, December 30, 2020, City of New Buffalo police officer David Hockenhull responded to Berrien County Dispatch to investigate a stolen gold 2008 Buick Lucerne. The Buick was tracked via GPS to the Shell gas station in New Buffalo, around 200 miles from the Valero in Durand, and Hockenhull located a Buick at the station matching the description. A Pokagon Tribal police officer arrived in response to Hockenhull's request for

backup as the Buick began to exit the driveway of the Shell station. Hockenhull effectuated a stop, actuating his cruiser's lights on the westbound on-ramp to I-94. The driver of the Buick was slow to pull over, so Hockenhull turned on his siren. Once the Buick pulled over, Hockenhull approached the Buick and could smell marijuana. Defendant was wearing dark clothing and a facemask. Hockenhull asked defendant for his license, and defendant said he did not have it. Hockenhull then asked defendant to step out of the vehicle and told him he was investigating a stolen car. Hockenhull testified that he then placed defendant under arrest because he exhibited a hesitant demeanor and did not step out of the vehicle. When the police ran the vehicle's VIN and license plate, the VIN matched that of the reported stolen Buick, but the plate was registered to a stolen Oldsmobile Alero. Hockenhull searched the vehicle for drugs or contraband, only to discover that the Buick was filled to the ceiling with bags of defendant's property. Shay's belongings that were originally left in the Buick were gone, along with the Buick's proper license plate, title, insurance, and registration.

Hockenhull testified that after he made the arrest, defendant told him that he borrowed the Buick but would not say from whom. Later, defendant stated that he rented the car but provided no further information. Hockenhull also testified that defendant asked him a series of questions regarding the investigation of the stolen car: "What's your reason for taking note of me? What gained your attention to me? Was it the vehicle? . . . Was it the people at the store that called the police?" Hockenhull further testified that defendant asked him how close to the state line he was, what the officer would have done if defendant fled, whether the county was tough on joyrides, and questions about the function of the GPS tracking device.

At trial, the jury found defendant guilty of receiving and concealing stolen property (motor vehicle) pursuant to MCL 750.535(7). Three prior supplemental offenses raised defendant's sentence to 48 to 144 months under MCL 769.12.[1]

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that mere possession of a stolen vehicle, without evidence that he knew the vehicle was stolen, is insufficient to convict him of receiving or concealing stolen property under MCL 750.535(7).

This Court applies a de novo standard when reviewing a conviction for sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).[2] The Court views

---

[1] Defendant was convicted of knowingly possessing and unlawfully driving away a different stolen Monte Carlo from a gas station in 2015. In addition to the Monte Carlo in 2015, defendant had two more prior felony convictions involving stolen motor vehicles.

[2] Plaintiff asserts that the verdict was not against the great weight of the evidence. However, great weight of the evidence is not at issue in this appeal because defendant did not file a motion for a new trial. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003) (finding that, because defendant failed to file a motion for new trial, defendant's argument that his convictions were not supported by the great weight of the evidence is unpreserved for review). See generally *People v*

the evidence in a light most favorable to the prosecution and determines whether a reasonable trier of fact could have found every element proven beyond a reasonable doubt, *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), deferring to the credibility determinations and reasonable inferences that supported the jury's verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 750.535(7) states that "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen, embezzled, or converted." Circumstantial evidence and the reasonable inferences drawn therefrom can prove the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution must prove every element of the crime to the jury beyond a reasonable doubt, but need not negate every theory of innocence. *Nowack*, 462 Mich at 400. "Guilty knowledge, as with most states of mind, cannot generally be proved by direct evidence absent admission by the defendant. By the very nature of the element, it must usually be inferred from all of the various circumstances of the case." *People v Westerfield*, 71 Mich App 618, 621; 248 NW2d 641 (1976).

In *Westerfield*, this Court properly considered the following factors to support the inference of guilty knowledge:

> (1) the defendant's possession of the stolen article shortly after it was stolen, (2) change in the condition of the stolen article, (3) alteration of identifying marks, serial numbers, or registration, (4) a purchase price out of line with the article's value, and (5) lack of any reasonable explanation from the defendant for his possession of the item. [*People v Salata*, 79 Mich App 415, 421-422; 262 NW2d 844 (1977), citing *Westerfield*, 71 Mich App at 622.]

The circumstances in this case strongly support the inference that defendant had guilty knowledge based on application of the *Westerfield* factors. It is also important to note that the jury was presented with evidence that defendant was wearing dark clothing and a face covering at the time of the arrest, matching Lauderdale's description of the man seen outside the gas station prior to the theft of the Buick. Regarding the first *Westerfield* factor, defendant was found in possession of the vehicle a mere 14 hours after it was stolen. The record indicates that the Buick was stolen around 1:00 a.m. on December 30, 2020, and around 3:00 p.m. that same day, defendant was found in possession of the Buick about 200 miles away. Second, defendant changed the condition of the vehicle when he removed Shay's belongings and filled the Buick with his personal items. An inference of guilty knowledge can also arise on account of the third factor. The record reveals that defendant replaced the original license plate with another license plate from a different stolen vehicle. Even more, defendant removed the vehicle's title and Shay's personal belongings from the vehicle. Finally, with respect to the fifth[3] *Westerfield* factor, defendant provided inconsistent

---

*Lemmon*, 456 Mich 625, 634; 576 NW2d 129 (1998) (applying the great weight standard to a motion for new trial).

[3] The fourth factor is not relevant because there was no evidence that defendant acquired the Buick by purchase.

and vague explanations for his possession of the Buick, separately claiming that he both "borrowed" and "rented" the vehicle, placing into doubt his credibility. To the extent that defendant challenged the credibility determinations of the jury, "[i]n determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016).

As noted above, the prosecution proffered evidence from which the jury could conclude that defendant knew that the vehicle was stolen. For these reasons, the evidence presented at trial was sufficient to support defendant's conviction.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford